Alison R. Leff*
Thomas R. Kayes*
THE CIVIL RIGHTS GROUP, LLC
2045 W Grand Ave, Ste B, PMB 62448
Chicago, IL 60612
tel: 708.722.2241
alison@civilrightsgroup.com
tom@civilrightsgroup.com

*Attorneys for Plaintiff*

*PHV Applications Forthcoming

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| WILLIAM MOSHER, | No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| CITY OF MESA; J. ALEXANDER; (FIRST NAME UNKNOWN) SULLIVAN; and, E. WICK, | |
| Defendants. | |

## Introduction

1.  In July 2021, Mesa Police Department officers shot William Mosher twice with beanbag shotgun rounds. Mosher fell. Then, as he lay on the ground, an officer tased him. Mosher was unarmed and following police instructions. There was no reason to shoot him.

## Parties

2.  Plaintiff William Mosher is an individual living in Arizona.

3.  Defendant City of Mesa is a municipal corporation.

4.  Defendant Sullivan is a Mesa police officer. Mosher sues Sullivan in his individual capacity.

5. Defendant J. Alexander is a Mesa police officer. His badge number is 20539. Mosher sues Alexander in his individual capacity.

6. Defendant E. Wick is a Mesa police officer. His badge number is 15856. Mosher sues Wick in his individual capacity.

## Jurisdiction & Venue

7. This court has subject-matter jurisdiction over Mosher's federal claims under 28 U.S.C. § 1331.

8. This court has subject-matter jurisdiction over Mosher's state-law claims under 28 U.S.C. § 1367.

9. Venue is appropriate in this judicial district because the events giving rise to all claims occurred in and around the City of Mesa.

## Allegations

10. On July 7, 2021, William Mosher was driving a car in Mesa, Arizona.

11. An acquaintance of Mosher was riding in the front passenger seat of Mosher's car.

12. The police wanted to arrest the acquaintance.

13. While Mosher was stopped at a traffic light at the corner of Country Club and Main Streets in Mesa, the police executed a tactic known as a vehicle containment.

14. The police told Mosher they were not there to arrest him.

15. The police told Mosher they were only after his acquaintance.

16. Mosher showed police officers both of his hands.

17. Mosher's hands were empty.

18. The police officers ordered Mosher to get out of his car.

19. Mosher complied.

20. The police officers could see that Mosher had no weapons in his hands.

21. An officer ordered Mosher to show that he had no weapons.

22. After Mosher got out of his car and stood next to it, Mosher lifted his shirt to show officers he had no weapons in his waistband.

23. While Mosher's shirt was lifted, showing he had no weapons, for no reason,

1

Sullivan fired a beanbag shotgun round at Mosher.

24. The round struck Mosher in his stomach.

25. The hit caused Mosher to step back and turn.

26. Alexander then fired a beanbag shotgun round at Mosher.

27. The round struck Mosher in his buttocks.

28. The hit caused Mosher to fall.

29. As Mosher was lying on the ground, Wick shot Mosher with a taser.

30. The taser hit Mosher on his side.

31. All the shots caused Mosher physical, mental, and emotional pain and suffering including some that continues to this day and is reasonably likely to continue into the future.

**Claims for Relief**

**Count I**

**Excessive Force, 42 U.S.C. § 1983**

**Mosher v. Alexander, Sullivan, and Wick**

32. Mosher incorporates all other allegations here by reference.

33. Alexander, Sullivan, and Wick used unreasonable force when they fired weapons at Mosher.

34. No reasonable officer facing the circumstances Alexander, Sullivan, and Wick faced would have found the force they used reasonable. This is because, among other things, Mosher had committed no crime, Mosher was not the suspect the police were interested in, Mosher was visibly unarmed, Mosher was complying with instructions, and as to the latter shots, Mosher had already been incapacitated by the first shot.

35. Alexander, Sullivan, and Wick were acting under color of law.

36. Alexander, Sullivan, and Wick's unreasonable force harmed Mosher.

**Count II**

***Monell* Liability, 42 U.S.C. § 1983**

**Mosher v. City of Mesa**

37. Mosher incorporates all other allegations here by reference.

38. Alexander, Sullivan, and Wick used unreasonable force when they fired weapons at Mosher.

39. At that time, members of the Mesa police department, especially those working with the United States Marshals Service's special task force—as these officers were—had a custom of using excessive force, including

    a. During arrests

    b. During arrests using vehicle containments (as was done here)

    c. Using less-than-lethal weapons like the beanbag shotgun and taser here.

40. Mesa police officials knew of this pattern, encouraged it, and allowed it to continue. Mesa officials were also aware of repeated, similar constitutional violations that were not properly investigated and for which the responsible officers were not disciplined or properly trained.

41. This custom caused Alexander, Sullivan, and Wick to use excessive force against Mosher.

### Count IV
*Assault*
**Mosher v. All Defendants**

42. Mosher incorporates all other allegations here by reference.

43. Alexander, Sullivan, and Wick assaulted Mosher when they shot him.

44. The assaults harmed Mosher.

45. The City of Mesa is vicariously liable for these assaults by its officers.

### Count V
*Battery*
**Mosher v. All Defendants**

46. Mosher incorporates all other allegations here by reference.

47. Alexander, Sullivan, and Wick battered Mosher when they shot him.

48. The batteries harmed Mosher.

49. The City of Mesa is vicariously liable for these batteries by its officers.

## Count VI
### *Negligence / Gross Negligence*
### Mosher v. City of Mesa

50. Mosher incorporates all other allegations here by reference.

51. The City of Mesa owes a duty of care to members of the public to those who come into contact with its officers, like Mosher.

52. The City of Mesa breached this duty by failing to adequately train or supervise officers involved in vehicle containments, the violent offender unit, or the East Valley Violent Offender Task Force, including Alexander, Sullivan, and Wick.

53. Before Alexander, Sullivan, and Wick used excessive for on Mosher, the City of Mesa was aware that officers using vehicle containments, on the violent offender unit, and working with the East Valley Violent Offender Task Force repeatedly used excessive force similar to how it was used here.

54. These breaches caused Alexander, Sullivan, and Wick to use force against Mosher for no good reason.

### Prayer for Relief

Plaintiff William Mosher respectfully requests judgment in his favor and against the defendants awarding this relief:

  a. Compensatory damages
  b. Punitive damages
  c. Pre- and post-judgment interest
  d. Attorneys' fees and costs
  e. All other relief the Court deems just

Dated: May 13, 2022                    Respectfully submitted,

/s/ Thomas R. Kayes
Attorney for Plaintiff

**Jury Demand**

William Mosher demands a jury trial.

Dated: May 13, 2022          Respectfully submitted,

                                             /s/ Thomas R. Kayes
                                             Attorney for Plaintiff