**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Mosher,<br><br>    Plaintiff,<br><br>v.<br><br>City of Mesa, et al.,<br><br>    Defendants. | No. CV-22-00833-PHX-SMB<br><br>**ORDER** |

Before the Court is Defendants' Motion to Dismiss (Doc. 75) Counts II through VI of Plaintiff's Second Amended Complaint ("SAC") (Doc. 70). Plaintiff filed a Response (Doc. 82), and Defendants filed a Reply (Doc. 84). After reviewing the briefing and relevant case law, the Court will grant the Motion as to Count III and deny the Motion as to all other Counts.

**I.    BACKGROUND**

    **A. Mosher's Arrest**

In July 2021, Plaintiff William Mosher was driving in Mesa, Arizona with an acquaintance sitting in the front passenger seat. (Doc. 70 at 2 ¶¶ 9–10.) The acquaintance had a warrant for his arrest. (*Id.* ¶ 10.) While Mosher was stopped at a traffic light, several law enforcement agencies converged on Mosher's position and utilized a "vehicle containment" tactic to prevent his vehicle from moving. (*Id.* ¶¶ 12–13.) Law enforcement officers then told Mosher they were executing a warrant to arrest the acquaintance. (*Id.* at 2–3 ¶¶ 14–15.) Mosher showed the officers his empty hands and proceeded to exit his

vehicle. (*Id.* at 3 ¶¶ 16–20.)

After Mosher exited his vehicle, an officer ordered him to "show that he had no weapons," triggering Mosher to lift his shirt exposing his waistband. (*Id.* ¶¶ 21–22.) While Mosher's shirt was lifted, an officer fired a beanbag shotgun round at his stomach. (*Id.* ¶ 24.) The round struck Mosher, causing him to step back and turn. (*Id.* ¶25.) With Mosher's back turned, Officer Jason Alexander fired another beanbag round striking Mosher's buttocks, causing him to fall to the ground. (*Id.* ¶¶ 24–28.) While Mosher was on the ground with his hands on his head, Officer Evan Wick, who was sitting in his vehicle, shot Mosher in the back with a taser. (*Id.* ¶ 30.) Officers then handcuffed Mosher and transported him to the Mesa Police Department Holding Facility. (*Id.* ¶ 31.) Police eventually transported Mosher to a hospital for treatment of the injuries sustained during his arrest. (*Id.* ¶¶ 32–36.) The police uncuffed Mosher, left the hospital, and did not engage in further contact. (*Id.* at 3–4 ¶ 37.)

### B. The Police Reports and Mosher's Criminal Case

Mosher alleges that after his arrest, Officer Alexander and Officer Wick (collectively, the "Officers") drafted police reports (the "Reports") that contained substantial falsehoods, including "falsely claiming Mosher presented an imminent risk of serious harm to officers before Defendants shot and tased him." (*Id.* at 4–5 ¶¶ 38, 52.) Mosher further alleges that Officer Alexander used the fabricated Reports to complete a "submission form" recommending Mosher be charged with resisting arrest under Arizona Revised Statute § 13-2508(A)(2) and obstructing governmental operations under Arizona Revised Statute § 13-2402(A)(2). (*Id.* at 4 ¶ 40.)

After the hospital released Mosher, he hired counsel to determine whether his interaction with law enforcement violated his civil rights. (*Id.* at 4 ¶ 45.) In doing so, Mosher's counsel served public records requests on the Mesa Police Department. (*Id.* ¶ 46.) The Department did not respond to the initial request, so counsel followed up on November 17, 2021. (*Id.* ¶ 48.) Shortly thereafter, in December 2021, Mosher received a summons to appear before the Mesa Municipal Court for charges related to his arrest in

1 | July 2021.  (*Id.* ¶ 49.)

2 | Mosher was charged under § 13-2508(A)(2) for resisting arrest and § 13-2402(A)(2) for obstructing governmental operations.  (*Id.* ¶ 50.)  In Mosher's view, the Officers weaponized fabricated evidence to mount a criminal prosecution intended to thwart any potential civil rights case Mosher might pursue because of the Officers' use of excessive force.  (*Id.* at 5 ¶ 54.)  Before the case proceeded to trial, the City of Mesa (the "City") dropped the obstruction charge.  (*Id.* ¶ 57.)  And on October 19, 2023, the jury rendered a not guilty verdict on the resisting arrest charge.  (*Id.* ¶¶ 58–59.)

### C. The Instant Lawsuit

Mosher filed his first Complaint in May 2022.  (Doc. 1.)  On July 14, 2022, this Court entered an Order staying the case "pending resolution of Mosher's parallel criminal case, number 2021078080."  (Doc. 23.)  On November 17, 2023, after Mosher's criminal case concluded, the Court lifted the stay (Doc. 37), and Mosher filed an Amended Complaint (Doc. 38).  Thereafter, the parties stipulated to dismiss the state law assault and battery claims against the Officers because Mosher failed to individually serve them with a notice of claim pursuant to Arizona Revised Statute § 12-821.01.  (Doc. 40.)  On May 17, 2024, Mosher filed his SAC, the operative complaint in this case.  Therein, Mosher alleges two 42 U.S.C. § 1983 claims against the Officers: excessive force (Count I) and malicious prosecution (Count II).  (*Id.* at 5–6 ¶¶ 63–73.)  Against the City, Mosher alleges a federal local governing body liability claim under *Monell v. Dep't Soc. Servs.*, 436 U.S. 658 (1978) (Count III), and state law claims of battery (Count IV), negligence/gross negligence (Count V), and malicious prosecution (Count VI).  (*Id.* at 6–8 ¶¶ 74–92.)  Defendants then filed a Motion to Dismiss Counts II through VI of the SAC.  (Doc. 75.)

## II. LEGAL STANDARD

To survive a Federal Rule of Civil Procedure 12(b)(6) motion for failure to state a claim, a complaint must comply with Rule 8(a)(2).  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

### III.   DISCUSSION

The Court briefly discusses two initial matters. First, Mosher agrees with Defendants that his *Monell* claim (Count III) should be dismissed. (*See* Doc. 82 at 2, 17.) Therefore, the Court will dismiss Count III with prejudice.

Second, in ruling on a motion to dismiss, the Court may consider "matters of judicial notice," *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), including information that is "generally known within the trial court's territorial jurisdiction; or can

be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b); *but see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("[A] court cannot take judicial notice of disputed facts contained in . . . public records."). Importantly, considering matters of judicial notice does not transmute a motion to dismiss into one for summary judgment. *See Ritchie*, 342 F.3d at 908. Proper subjects of judicial notice include judgments and other court documents. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007); *see also Khoja*, 899 F.3d at 999 ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."). A court should not accept as true "allegations that contradict matters properly subject to judicial notice," nor "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

Defendants request the Court to take judicial notice of the criminal trial transcript attached to Defendants' Motion to Dismiss (Doc. 75). Additionally, Defendants ask that the Court take notice of the Maricopa County Attorney Office submission form dated July 8, 2021 (the "Submission Form") for the limited purpose of establishing the date of submission. The Submission Form is referenced without a specific date in the SAC, (Doc. 70 at 4 ¶¶ 38–40), and Defendants have provided a copy of the Submission Form obtained via subpoena duces tecum submitted to the Maricopa County Attorney's Office, (Doc. 84-1). With seemingly no objection from Mosher, the Court will take judicial notice of both the criminal trial transcript and, for the limited purpose of establishing the date, the Submission Form.

**A. Malicious Prosecution (Counts II and VI)**

Defendants offer several distinct challenges to Mosher's malicious prosecution claims. First, Defendants argue that Mosher's federal malicious prosecution claim against the Officers is barred, as there is an adequate remedy existing under state law. (Doc. 75 at 7 (citing *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985); *Freeman v. City of Santa*

*Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)); *see also* Doc. 84 at 11–12.) Additionally, Defendants contend that Mosher's federal and state malicious prosecution claims fail because he has not overcome the presumption of prosecutorial independence. (Doc. 84 at 9.) Defendants also argue that both claims fail because Mosher cannot show a causal link between the criminal charges (resisting arrest and obstruction of governmental operations) and the alleged "fabricated evidence." (Doc. 75 at 7; Doc. 84 at 8–9.) Finally, Defendants maintain that the claims fail because the record shows that probable cause existed to arrest Mosher and initiate criminal proceedings against him. (Doc. 75 at 9–10; Doc. 84 at 9–11.)

In response, Mosher argues that he sufficiently alleged all elements of his federal and state law § 1983 malicious prosecution claims, which includes his allegations that the Officers deprived him of his First Amendment right to free speech. (Doc. 82 at 16.) Mosher also contends that probable cause is not readily discernible given the allegations in the SAC. (*Id.* at 8–9.) And, according to Mosher, the SAC precludes finding probable cause as his allegations show his prosecution was induced by "fabricated evidence and wrongful conduct." (Doc. 82 at 11 (citing *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004)).)

"Federal courts rely on state common law for elements of malicious prosecution." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) (citation omitted). "Federal and state malicious prosecution claims are intertwined; to adequately plead federal malicious prosecution, a plaintiff must allege the elements of a state malicious prosecution claim and establish that the prosecution was conducted for the purpose of denying plaintiff a specific constitutional right." *Henry v. City of Somerton*, No. CV-18-03058-PHX-DJH, 2020 WL 8574831, at *8 (D. Ariz. 2020) (citing *Awabdy*, 368 F.3d at 1066; *Usher v. City of L.A.*, 828 F.2d 556, 562 (9th Cir. 1987)). Under Arizona law, a malicious prosecution claim requires: "(1) a criminal prosecution, (2) that terminates in favor of plaintiff, (3) with defendants as prosecutors, (4) actuated by malice, (5) without probable cause, and (6) causing damages." *Id.* (citing *Slade v. City of Phoenix.*, 541 P.2d 550, 552 (Ariz. 1975)).

"Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed." *Awabdy*, 368 F.3d at 1066; *see also Henry*, 2020 WL 8574831, at *8 ("Plaintiffs must allege that a state or local official improperly exerted pressure, knowingly provided misinformation to the prosecutor, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." (citing *Lacy v. City of Maricopa*, 631 F. Supp. 2d 1183, 1195 (D. Ariz. 2008))).

Malicious prosecution is not a federal constitutional tort if state law provides a remedy. *Bretz*, 773 F.2d at 1031. But there is an exception to this rule, allowing a plaintiff to sustain a federal tort "when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." *Id.* Thus, while Defendants are correct that Mosher has not pleaded an equal protection violation, he has pleaded that his prosecution violated his First Amendment right to free speech. (*See* Doc. 70 at 6 ¶ 71; Doc. 82 at 16.) And the Ninth Circuit has recognized that First Amendment violations fit within the recognized exception giving way to federal malicious prosecution claims. *See Awabdy*, 368 F.2d at 1070 (finding that the First, Thirteenth, and Fourteenth Amendments may provide a basis for asserting a malicious prosecution claim under § 1983). Therefore, the Court rejects Defendants' argument that Mosher's § 1983 malicious prosecution claim against the Officers should be dismissed based upon a remedy existing under Arizona law.

The Court now addresses the presumption of prosecutorial independence. As noted, malicious prosecution cases require a plaintiff to prove, in part, that the defendant initiated a criminal prosecution without probable cause that terminated in his favor. *Slade*, 541 P.2d at 552. And, in malicious prosecution cases, Federal law recognizes a rebuttable presumption that "the prosecutor filing the complaint exercised independent judgment in determining that probable cause for accused's arrest exists at that time." *See Newman v. County of Orange*, 457 F.3d 991, 993 (9th Cir. 2006) (citing *Smiddy v. Varney*, 665 F.2d

261, 266–67 (9th Cir. 1981), *overruled in part on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006)).  To hold the arresting officers liable for malicious prosecution, a plaintiff must overcome the presumption.  *See Smiddy*, 655 F.2d at 266–67; *see also Newman*, 457 F.3d at 994–95 (citing *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994)); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1027–28 (9th Cir. 2008) (finding the plaintiff overcame the presumption where trial testimony revealed that, among other things, prosecutor worked "hand-in-hand" with investigating officers).

This presumption is most often considered at summary judgment or trial.  *See, e.g.*, *Dupris v. McDonald*, 2012 WL 210722, *8 (D. Ariz. Jan. 24, 2012); *Newman*, 457 F.3d at 996; *Smiddy*, 655 F.2d at 266–67.  Thus, despite discussion of the presumption in the briefing on this Motion, weighing whether Mosher has presented sufficient evidence to rebut the presumption is premature.  *Cf. West v. City of Mesa*, 128 F. Supp. 3d 1233, 1241 (D. Ariz. 2015) (denying a motion to dismiss a malicious prosecution claim based on the presumption because "Plaintiff alleges [defendant] knowingly provided false evidence to the prosecutor and engaged in other bad faith conduct during Plaintiff's investigation.").  Indeed, doing so would, in a way, require Mosher to offer evidence beyond what a complaint requires, and thereby undermine a cornerstone of Rule 12 determination—to accept the well-pled factual allegations as true and to construe them in the light most favorable to the nonmoving party, *Cousins*, 568 F.3d at 1067.  Accordingly, the Court will not consider whether Mosher rebutted the presumption of prosecutorial independence at this time.

Next, the Court addresses the issue of probable cause.  To determine whether an officer had probable cause to make an arrest, courts "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.  *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (cleaned up).  Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  "Probable cause 'is not a high bar.'"  *Wesby*, 583 U.S.

at 57 (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

Here, Mosher alleges that he followed law enforcement's instructions to show his hands, exit his vehicle, and lift his shirt to show that he did not have a weapon. (Doc. 70 at 3 ¶¶ 16–23.) In other words, Mosher's allegations are that he unequivocally complied with law enforcement commands, yet he was still shot with bean-bag rounds, tazed, and arrested. (*Id.* ¶¶ 23–31.) Additionally, at the scene, law enforcement announced that Mosher was not the target of the vehicle containment, and that the task force was present to arrest Mosher's acquaintance. (Doc. 70 at 2 ¶ 14.) Accepting these allegations as true, Mosher could not reasonably be determined to be engaged in, or suspected to be engaged in, criminal activity at the time of his arrest. *See Gates*, 462 U.S. at 232. Mosher alleges that, after his arrest, the Officers fabricated the Reports to reflect that Mosher was an "imminent risk of serious harm to officers," and that information was then used to charge and prosecute him for resisting arrest and obstructing government operations. (*Id.* at 4–5 ¶¶ 50–56.) The purpose of the fabricated Reports was to manufacture a criminal case against him to waylay any potential civil rights case arising out of the Officers alleged excessive force. (*Id.* at 5 ¶ 54.) And, as part of the Officers scheme, they gave false information to the prosecution and Mosher's criminal defense counsel. (*Id.* ¶ 56); *cf. Harper*, 533 F.3d at 1027–28. Ultimately, according to Mosher, the Officers, knowing there was no probable cause, acted with malice in falsifying documents to secure Mosher's prosecution to suppress his First Amendment right to free speech. (*Id.* at 6 ¶¶ 70–71); *see also Awabdy*, 368 F.3d at 1066. At bottom, these facts, accepted as true, establish that the Defendant Officers lacked probable cause both to arrest and to charge Mosher. *See Awabdy*, 368 F.3d at 1066.

Defendants also contend that because the Mesa City Court judge found more than sufficient evidence for Mosher's case to proceed to a jury, probable cause existed for his arrest and prosecution. (Doc. 75 at 10.) This argument is similar to one in *West*, in which a defendant FBI agent argued a grand jury indictment should serve as conclusive evidence of probable cause and thus bar a subsequent malicious prosecution claim. 128 F. Supp. 3d

at 1241. Therein, the Court also noted that "[t]he argument here is, in essence, that if a conspiracy to lie is so successful that on the basis of the lies a grand jury finds probable cause, the conspirators become immunized for the constitutional injury they have caused." *Id.* (quoting *Harris v. Roderick*, 126 F.3d 1189, 1198 (9th Cir. 1997)). Ultimately, the Court refused to dismiss the plaintiff's state law malicious prosecution claim because he alleged that "the probable cause that served as the basis for his indictment was tainted by the actions of [the FBI agents]." *Id.* (citing *Harris*, 126 F.3d at 1198 ("[A] finding of probable cause that is tainted by the malicious actions of government officials . . . does not preclude a claim against the officials involved." (cleaned up))). Here, Mosher goes a step further than alleging that any probable cause was tainted, and instead alleges that probable cause simply did not exist. (*See* Doc. 70 at 6 ¶ 70.) Thus, like the grand jury indictment in *West*, the Mesa City Court judge's determination regarding Mosher's criminal case's procession to a jury does not establish probable cause nor preclude Mosher's claim. *See* 128 F. Supp. 3d at 1241.

In sum, in malicious prosecution cases, courts are generally concerned with whether the operative complaint evinces probable cause. *See Overson v. Lynch*, 83 Ariz. 158, 161 (1957). If probable cause exists, it is an absolute defense to a suit for malicious prosecution. *McClinton v. Rice*, 265 P.2d 425, 431 (Ariz. 1953). Here, based on allegations in the SAC, probable cause to arrest and charge Mosher did not exist. Therefore, the Court will not dismiss Counts II and VI.

**B. Battery and Negligence (Counts IV and V)**

Mosher alleges that the Officers' actions make the City vicariously liable for battery and negligence or gross negligence. (Doc. 70 at 7–8 ¶¶ 83–92.) Defendants contend that these claims are barred by *Ryan v. Napier*, 425 P.3d 230 (Ariz. 2018) and Arizona Revised Statute § 12-820.05. (Doc. 75 at 10–11.) In response, Mosher contends that Defendants misinterpret *Ryan* and § 12-820.05, and that neither bar Mosher's claims. (Doc. 82 at 4–6.)

Common law battery consists of an intentional act by one person that "results in harmful or offensive conduct with the person of another." *Duncan v. Scottsdale Med.*

*Imaging, Ltd.*, 70 P.3d 435, 438 (Ariz. 2003) (citing Restatement (Second) of Torts §§ 13, 18 (1965)). A negligence claim requires proof of four elements: "(1) the existence of a duty recognized by law requiring defendants to conform to a certain standard of care; (2) defendants' breach of that duty; (3) a causal connection between the breach and plaintiff['s] resulting injury; and (4) actual damages." *Delci v. Gutierrez Trucking Co.*, 275 P.3d 632, 634 (Ariz. Ct. App. 2012). The Arizona Supreme Court considered, and ultimately refused to adopt, an amalgam of these two common law theories in *Ryan*. There, the plaintiff sued an officer for "negligently releas[ing] [a police dog] and that use the dog constituted a negligent, unjustified, and excessive use of force." *Ryan*, 425 P.3d at 234 (quotation marks omitted). The plaintiff also sued the Pima County Sheriff under a theory of vicariously liability. *Id.* The Arizona Supreme Court held that "negligent use of intentionally inflicted force" is not a cognizable claim under Arizona law. *Id.* at 236. The court explained that the availability of such claim "could permit plaintiffs to 'plead around' statutory provisions that apply only to intentional tort claims." *Id.* at 237. The court did not, however, preclude a plaintiff from pursuing a battery claim based upon intentional acts, or negligent hiring or training claims against an employer. *See id.* at 238. Here, Mosher asserts a battery claim against the City under a vicarious liability theory. (Doc. 70 at 7 ¶¶ 79–82.) Mosher also asserts a separate, direct negligent hiring and supervision claim against the City. (*Id.* at 7–8 ¶¶ 83–87.) Therefore, because Mosher is not asserting a claim akin to the rejected "negligent use of intentionally inflicted force" claim, *Ryan* is inapposite insofar as Defendants rely on its holding to preclude Mosher from asserting his distinct claims for battery and negligence. *See* 425 P.3d at 236.

Suing a public entity or employee for an intentional tort or negligence implicates certain statutory immunity provisions and presumptions. *See* § 12-820.05(B); *see also* Ariz. Rev. Stat. § 12-716(A)(1) (presuming a peace officer acted reasonably in the intentional use of physical force); § 12-716(A)(2) (presuming the employer of the peace officer to have reasonably hired and trained its officer to use that physical force). Under § 12-820.05(B), "a public entity is immune from liability for damages caused by an

employee's felony act unless the entity knew of the employee's propensity to commit such acts."

Defendants argue that Mosher states the "[t]aser and bean bag deployments were felony intentional acts." (Doc. 75 at 13.) Although, upon review, no allegations in the SAC, or argument in Mosher's Response to the instant Motion, posit that the Officers' conduct was felonious.[1] (*See* Doc. 70; Doc. 82.) Moreover, even if the Court found that the Officers' acts fell within the ambit of § 12-820.05(B), Mosher sufficiently alleges that the City knew of the Mesa police forces' propensity for the alleged excessive force, which includes Officers Alexander and Wick. (*See* Doc. 70 at 8 ¶ 86); § 12-820.05(B); *cf. McGrath v. Scott*, 250 F. Supp. 2d 1218, 1235 (D. Ariz. 2003) (finding that, "while, Plaintiff neither explicitly alleges Scott's propensity to comment felonious acts nor the State's knowledge of this propensity," her allegations implicitly established defendant's propensity); *Nees v. City of Phoenix*, No. CV-21-01134, 2022 WL 17976422, at *6 (D. Ariz. Dec. 28, 2022) ("Because Plaintiff *does not allege* that the City knew of Defendant Cooke's propensity, the material question is whether Defendant Cooke's conduct amount

---

[1] The Arizona Supreme Court has not expressly decided whether § 12-820.05 applies despite the absence of a criminal felony charge or conviction. However, the statute allows the Court to make a felony determination in the first instance. *See Cameron v. Gila County*, No. CV-11-00080-PHX-JAT, 2011 WL 2115657, at *4 (D. Ariz. May 26, 2011); *see also Ryan*, 425 P.3d at 237 (citing *State v. Heinze*, 993 P.2d 1090, 1094 (Ariz. Ct. App. 1999) ("[I]nterpreting § 41-621(L), which has language similar to § 12-820.05(B), and concluding that a felony conviction is not a prerequisite to the application of the felony exclusion.")); *see also Rand v. City of Glendale*, No. 1 CA-CV 07-0722, 2008 WL 5383363, at *6 (Ariz. Ct. App. Dec. 26, 2008) (finding "a felony conviction [was] not a prerequisite to application of the immunity provided by A.R.S. § 12-820.05" and that "the trial court did not err in determining that [] claims for battery and false arrest/imprisonment, as alleged in [the] complaint . . ., set forth conduct that would, if proven, constitute a felony under Arizona law"); *Fernandez v. City of Phoenix*, CV-11- 02001-PHX-FJM, 2012 WL 2343621, at *3 (D. Ariz. Jun. 20, 2012); *Cameron*, 2011 WL 2115657, at *4; *Al-Asadi v. City of Phoenix*, No. CV-09-00047-PHX-DGC, 2010 WL 3419728, at *5 (D. Ariz. Aug. 27, 2010); *McGrath v. Scott*, 250 F. Supp. 2d 1218, 1234 (D. Ariz. 2003); *See Link v. Pima County*, 972 P.2d 669, 675 (Ariz. Ct. App. 1998) (noting that immunity should be determined "at the earliest possible stage in litigation" (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991))).

1  to a 'criminal felony.'" (emphasis added)). Thus, the allegations, accepted as true, would
2  overcome the statutory immunity bar in § 12-805.05(B). Additionally, the allegations
3  would satisfy the required elements of battery as Mosher alleges that the Officers
4  intentionally used unjustified force against him when they employed bean-bag rounds and
5  a taser, resulting in several injuries. (*See* Doc. 70 at 3 ¶¶ 23–30, 5 ¶¶ 60–62, 7 ¶¶ 79–82.)
6  At bottom, Mosher has sufficiently pleaded facts to allow his battery claim against the City
7  to proceed. *See Duncan*, 70 P.3d at 438.

Section 12-820.05 also applies to negligent training and supervision claims. *See Gallagher v. Tucson Unified Sch. Dist.*, 349 P.3d 228, 230–31 (Ariz. Ct. App. 2015) (applying § 12-820.05 to a negligent hiring and supervision claim); *Nees*, 2022 WL 17976422, at *6 n.5 (same). As discussed, even if the Court found the Officers' acts were felonious, Mosher has sufficiently alleged the City's knowledge of the Officers' propensity for such acts. Therefore, Mosher's allegations would overcome the immunity bar imposed under § 12-805.05(B) as it applies to his negligent training and supervision claim. Thus, the remaining inquiry for the Court is simply whether Mosher has sufficiently pleaded his negligence claim.

Defendants did not initially challenge the sufficiency of Mosher's negligence allegations, but in their Reply brief assert that a direct negligence claim against the City ought to fail because Mosher only offers generalized, cursory allegations. (Doc. 84 at 8.) For a negligent supervision claim, "the plaintiff must allege that an employee committed a tort, that the defendant employer had a reason and opportunity to act, and that the defendant failed to perform its duty to supervise." *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004). To state a claim for negligent training, a plaintiff must allege facts regarding the training that a defendant's employees received and showing that a defendant's training or lack thereof was negligent. *Perry v. Arizona*, CV-15-01338-PHX-DLR, 2016 WL 4095835, at *2 (D. Ariz. Aug. 2, 2016) (citing *Cotta v. County of Kings*, 1:13-cv-00359-LJO-SMS, 2013 WL 3213075, at *16 (E.D. Cal. June 24, 2013) (dismissing negligent training and supervision claim where complaint did not allege facts regarding the

training of prison personnel)).

Defendants rely, in part, on in *Davis v. City of Glendale*, No. CV-23-00016-PHX-DWL, 2023 WL 5333259, *7 (D. Ariz. Aug. 18, 2023), wherein the Court found the allegations for a negligent hiring claim "wholly conclusory" and "broad, boilerplate allegations entirely lacking specificity." Those allegations included claims that the defendant City:

> [N]egligently hired, trained, supervised and/or retained the officers involved in the subject incident by:
>
> a. Implementing, maintaining and tolerating policies, practices and customs which contributed to the illegal and negligent actions of the officers . . . ;
>
> b. Hiring the officers without reasonably investigating or adequately determining their propensity for the type of improper conduct which they committed against Plaintiff . . . ;
>
> c. Failing to adequately train or supervise the officers . . . ;
>
> d. Failing to adequately discipline, demote and/or terminate the officers for any improper conduct prior to the incident at issue . . . [.]

*Id.* Here, Mosher alleges that the City owed him a duty of care, the City breached that duty by failing to adequately train or supervise officers like Alexander and Wick, and as a result, the Officers used unreasonable, excessive force on him. (Doc. 70 at 7–8 ¶¶ 83–87.) Mosher also alleges that the City knew that officers, like Alexander and Wick, who worked on their task force repeatedly used excessive force. (Doc. 70 at 8 ¶ 86.) Unlike the complaint in *Davis*, Mosher's allegations name the specific officers the City failed to train, identifies the task forces in which they work, and identifies the execution of the vehicle containment technique as an example of where the City has fallen short. *Cf. Davis*, 2023 WL 5333259, at *7; *Baker v. Tevault*, No. CV 20-01960-PHX-JAT (JZB), 2021 WL 1171492, *8 (D. Ariz. 2021) (dismissing a negligent hiring claim where the complaint was "devoid of any factual bases plausibly supporting the assertions of multiple prior violations . . . [and] no facts from which to infer that the City knew of and negligently failed to address

[the issue]")  In short, accepting the allegations in the SAC as true, Mosher has put forth sufficient factual basis to establish his negligent hiring or supervision claim.

## IV.  CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** granting in part and denying in part Defendants' Motion to Dismiss (Doc. 75).

**IT IS FURTHER ORDERED** dismissing Count III of Plaintiff's Second Amended Complaint with prejudice.

Dated this 9th day of December, 2024.

*[signature]*

Honorable Susan M. Brnovich
United States District Judge